The charter of the plaintiff railroad company granted in 1833 (Ga. L. 1833, p. 256) provided: "The stock of the said company and its branches shall be exempt from taxation for and during the term of seven years from and after the completion of the said railroads or any one of them: and after that, shall be subject to a tax not exceeding one half percent per annum on the net proceeds of their investments."
In the instant suit, brought by the company against the State Revenue *Page 140 
Commissioner, it sought among other things to obtain a declaratory judgment decreeing that such charter provision constitutes a contract between the plaintiff and the State of Georgia, valid and binding upon the State and its officers in perpetuity, and prayed also for a perpetual injunction to restrain the defendant and his successors in office from assessing certain of its railroad properties described as "charter tax lines" from ad valorem taxation. Held:
Whether the petition be construed as one brought against the defendant in his official capacity or in his individual capacity, it was in substance and effect an action against the State and was not maintainable, the State not having consented to be thus sued. The court therefore erred in overruling the third ground of general demurrer presenting this contention. Other grounds of demurrer, whether general or special, should not have been passed upon, and direction is given that ground 3 of the general demurrer be sustained, and that the petition be thereupon upon dismissed, without any ruling or judgment as to other grounds, and without prejudice to either party or the State with respect thereto.
 No. 16178. JUNE 11, 1948. REHEARING DENIED JULY 16, 28, 1948.
On October 15, 1945, Georgia Railroad Banking Company filed a petition in the Superior Court of Fulton County "against M. E. Thompson, in his representative capacity as State Revenue Commissioner of the State of Georgia," seeking a declaratory judgment and injunction, the object of the suit being in part to prevent the defendant from assessing for ad valorem taxation two lines of railroad owned by the petitioner, one extending from Augusta to Atlanta, and one from Union Point to Athens, Georgia; it being alleged and contended that, under its charter and also under previous adjudications, these railroad properties are exempt from ad valorem taxation. The petition was sanctioned and ordered filed, and a restraining order was issued.
On December 5, 1945, the defendant as thus sued filed a general and special demurrer to the petition.
The plaintiff offered two amendments, both of which were allowed on December 16, 1946, subject to demurrer or other objection. One, designated as "Amendment No. 1 of Dec. 16th, 1946," prayed that the petition be amended by striking from the first and unnumbered paragraph the allegation that said petition is "against M. E. Thompson, in his representative capacity as State Revenue Commissioner of the State of Georgia," and by inserting in lieu thereof the allegation that said petition is "against M. E. Thompson, who is State Revenue Commissioner *Page 141 
of the State of Georgia." No objection was ever made to the allowance of this amendment. The other amendment, designated as "Amendment No. 2, of Dec. 16, 1946," sought to add a third line of railroad, extending from Camak to Warrenton, Georgia, as to which third line it was alleged that plaintiff is entitled to the same relief as prayed with respect to the other two lines. In his order allowing this amendment subject to demurrer or objection, the judge enlarged his former restraining order so that it would include such third line, as prayed.
On November 24, 1947, on a "plea for substitution of party" filed by Glenn S. Phillips, who succeeded Thompson as State Revenue Commissioner, the judge entered an order substituting Glenn S. Phillips as a party defendant in the case and ordering that the cause proceed "against the said Glenn S. Phillips in the same manner and with the same consequences as if he had been the original defendant therein." Such "plea for substitution of party" alleged the appointment of Glenn S. Phillips as State Revenue Commissioner, and his adoption of the pleadings of the original defendant in said case.
On the same date, November 24, 1947, the defendant Phillips filed objections to the allowance of the amendment of December 16, 1946, adding the third line of railroad, and to the inclusion of this line within the former restraining order. Also on the same date, the defendant "after all the amendments filed by the plaintiff have been allowed, subject to the objections to said amendments . . adopts and renews its demurrers previously filed, both general and special, on each and every ground therein set out to the original petition, and also to the petition as amended, and says that said petition as amended should be dismissed for each and every reason set out in the original demurrers." Other grounds of demurrer, both general and special, were then stated.
On the same date the judge entered an opinion and judgment, (1) overruling "the general and special demurrers, original and as made and renewed after the filing of amendments by the plaintiff . . on each and every ground," and (2) refusing "to dissolve the restraining order heretofore granted." It was stated in the order that, "Even if the case be construed as not being sufficient under the Declaratory Judgment Act, it does set forth *Page 142 
a cause of action as a bill of peace." The defendant excepted.
In ground 3 of the general demurrer, it was expressly urged that the suit "is in reality an action against the State, and the State has not consented to be made a party to this action or for the action to proceed against it." The same contention is expressly urged in this court by Phillips as plaintiff in error.
The petition as amended contained substantially the following allegations:
3. The defendant, as State Revenue Commissioner, is empowered by statute to assess railroad property for taxation by the State and its political subdivisions and to issue executions therefor, but is exceeding the authority given to him by the statutes of the State of Georgia and is acting unlawfully and in violation of the Constitution of the State of Georgia and of the United States, for the reasons hereinafter set out.
4. On August 28, 1945, the defendant wrote the following letter jointly to the petitioner and to C. H. Phinizy, its president: "Dear Sirs: The Georgia Railroad Banking Company having failed to file full and complete tax returns with the State Revenue Commission of the State of Georgia for the years 1939 through 1945, inclusive, you are hereby notified of such delinquency and are demanded to make full and complete tax returns to the State Revenue Commissioner within twenty days, as provided by law, covering all taxable property of said Georgia Railroad Banking Company, for State, County, Municipal and school taxes. Yours very truly, Department of Revenue, M. E. Thompson, Commissioner. Blanks will be furnished upon request."
5. The petitioner denies that, for the years 1939 through 1945 inclusive, or for any one of those years, it failed to file full and complete tax returns, but alleges that it has filed such returns and paid all taxes for which it was lawfully liable. The petitioner has therefore declined to make any returns to the State Revenue Commissioner in addition to the returns already made.
6. Nevertheless the defendant has threatened to and will, unless restrained by this court, assess against the petitioner ad valorem taxes with respect to certain of its lines of railroad and their appurtenances, namely, the main line from Augusta to Atlanta; the Athens Branch, from Union Point to Athens (the approximate *Page 143 
length of each being stated); both of which lines were constructed under and by virtue of the act of the General Assembly of Georgia approved December 21, 1833, hereinafter referred to; and the branch from Camak to Warrenton, a distance of four miles, which was constructed under and by virtue of the act of the General Assembly of Georgia assented to December 22, 1835, which amended the charter of the petitioner so as to authorize the construction of such branch line; said three lines of railroad being hereafter referred to as the "charter tax lines."
7. The petitioner's charter tax lines are not subject to ad valorem taxation, as will more fully hereinafter appear.
8. The petitioner is a railroad corporation chartered as "Georgia Railroad Company" by the State of Georgia by special act of the General Assembly approved December 21, 1833, the name of said company having been changed to "Georgia Railroad Banking Company" by a special act of the General Assembly approved December 18, 1835.
9. By section 15 of said act approved December 21, 1833, which is now and at all times since its approval has been a part of the petitioner's charter, it is enacted as follows: "The stock of the said company and its branches shall be exempt from taxation for and during the term of seven years from and after the completion of the said railroads or any one of them; and after that, shall be subject to a tax not exceeding one half percent per annum on the net proceeds of their investments."
10. The provision of the petitioner's charter as above quoted is applicable to the petitioner's said charter tax lines, all of which were completed many years prior to 1939.
11. In addition to its charter tax lines, the petitioner owns other lines of railroad, herein referred to as its "general tax lines," to which the quoted provisions of its charter are not applicable.
12. The petitioner has always paid taxes on the general tax lines on the ad valorem basis. The assessment in question in this case is with respect to the charter tax lines of the petitioner. The petitioner has never paid ad valorem taxes with respect to the charter tax lines, but these lines have always been taxed on their net income under the provisions of the petitioner's charter quoted in paragraph 9 hereof. The petitioner has regularly *Page 144 
each year made tax returns as required by law of the charter tax lines on the basis of the net income, and said returns have been accepted by the State tax authorities, and said returns having been accepted by the State and the tax paid thereon, they cannot now be opened.
The net income payable under the charter is not the rental received by the petitioner from its lessees, but is the net income from the operation of the charter tax lines. The net income of the charter tax lines has always been computed in this way. The taxes now payable on one-half of one percent of net income are very much less than the taxes payable on the ad valorem basis at the prevailing tax rates.
13. On May 7, 1881, the petitioner, in the exercise of the power conferred upon it by its said charter, leased its railroad properties to William M. Wadley for the term of 99 years from April 1, 1881, and Louisville and Nashville Railroad Company and Atlantic Coast Line Railroad Company are Wadley's successors in interest to said lease.
14. The defendant claims that, in assessing the taxes here complained of, he is proceeding under the act of the General Assembly of Georgia approved February 28, 1874 (Ga. L. 1874, p. 107), entitled "An Act to amend the tax laws of this State, so far as the same relate to railroad companies, and to define the liability of such companies to taxation, and to repeal so much of the charters of such companies, respectively, as may conflict with the provisions of this Act" (Code, §§ 92-2602, 92-2603, 92-2604), and under article 1, section 3, paragraph 3 of the Constitution "as amended August 7, 1945," which reads: "All exemptions from taxation heretofore granted in corporate charters are declared to be henceforth null and void;" although the Constitution of 1877 provided "No . . law impairing the obligation of contracts . . . shall be passed," and this provision was retained "in the Constitution as amended August 7, 1945."
15. That part of section 15 of the petitioner's charter, quoted in paragraph 9 hereof, is an irrevocable and inviolable contract between the State of Georgia and the petitioner, and can not be modified or changed by any subsequent legislative act of the State or by any subsequent provision in the State Constitution. The said act of 1874, and article 1, section 3, paragraph 3 of *Page 145 
the Constitution, referred to in paragraph 14 hereof, are unconstitutional and void, in that they are contrary to article 1, section 10, paragraph 1 of the Constitution of the United States, which provides that "No State . . shall pass any . . law impairing the obligation of contracts," in that said act of 1874 and said provision of the Constitution of Georgia (1945) undertake to subject the charter lines of the petitioner to ad valorem taxation in violation of the aforesaid provision of section 15 of the petitioner's charter. For the same reason, said act of 1874 is unconstitutional and void, because it violates the above stated provision of the Constitution of Georgia of 1877, as amended August 7, 1945, declaring that "No . . law impairing the obligation of contracts . . shall be passed."
For these reasons the assessment which the defendant has threatened to make and which, unless restrained, he will make against the petitioner for ad valorem taxes on the petitioner's charter tax lines for the years 1939-45, inclusive, are not authorized by law or by the Constitution, and the acts and things threatened by the defendant are illegal and in violation of the rights of the petitioner.
16. If the defendant is proceeding under any other act of the General Assembly, or under any provision of any Constitution of the State of Georgia, passed or adopted subsequently to December 21, 1833, any such other act or constitutional provision is null and void because in violation of article 1, section 3, paragraph 2 of the Constitution of Georgia (contract clause), in that it seeks to subject the charter tax lines of the petitioner to ad valorem taxation in violation of the aforesaid provision of section 15 of the petitioner's charter.
17. "Article 1, section 3, paragraph 3 of the Constitution of Georgia of 1877, as amended August 7, 1945," which provides, "All exemptions from taxation heretofore granted in corporate charters are declared to be henceforth null and void," is itself unconstitutional and void when applied to the taxation of the charter tax lines of the petitioner on an ad valorem basis, because the same is contrary to article 1, section 10, paragraph 1 of the United States Constitution, which provides that "No State shall . . pass any . . law impairing the obligation of contracts," because it seeks to subject the charter tax lines of the petitioner *Page 146 
to ad valorem taxation in violation of section 15 of the petitioner's charter. In other words, the State of Georgia can not avoid the Constitution of the United States by repealing its own contracts or by declaring its own contracts void.
18. The said provision in the Constitution of Georgia, which provides that "All exemptions from taxation heretofore granted in corporate charters are declared to be henceforth null and void," is by its own terms not applicable in this case. It is in terms prospective and not retrospective. The defendant is seeking to tax the petitioner for ad valorem taxes on its charter tax lines for the years 1939 to 1945, both inclusive. Said provision of the Constitution does not purport to be retroactive in operation, or to declare any exemption from taxation theretofore granted to be void ab initio, but only to declare them "henceforth null and void." Accordingly, said Constitution does not purport to authorize and does not authorize the act threatened by the defendant; nor does the same purport to apply to the provisions of the petitioner's charter.
19. In 1874, shortly after passage of the above-mentioned act of February 28, 1874, which purported to tax all railroad companies on an ad valorem basis and to repeal the charters of such companies as might conflict with the provisions of said act, the Comptroller-General of Georgia issued executions against the petitioner for taxes claimed under said act. To these executions the petitioner filed an affidavit of illegality in the Superior Court of Fulton County, as provided in said act, and on the hearing thereof the superior court sustained the affidavit. The judgment of the superior court was affirmed by the Supreme Court of Georgia in State of Georgia v. Georgia Railroad BankingCo., 54 Ga. 424. The petitioner then quotes headnotes 1, 2, and 3 of that decision. "Petitioner pleads the judgment in that case as res adjudicata of the issues in this case, and as an estoppel by judgment of said issues, to wit, that the lines described in this petition as charter tax lines are not subject to ad valorem taxes, but are taxable only on their net income under the special provisions of petitioner's charter; and the judgment being of this honorable court, petitioner prays the court to take judicial notice thereof."
20. On January 7, 1904, the petitioner filed its bill in equity *Page 147 
in the Circuit Court of the United States for the Northern District of Georgia against William A. Wright, in his official capacity as Comptroller-General of the State of Georgia, alleging, among other things, that the defendant claimed, first, that the petitioner should pay a direct tax on the value of its railroad and equipment in excess of $4,156,000, and second, that the petitioner should pay a tax on its franchises, said second claim being made under an act of the legislature approved December 17, 1902, entitled "An Act to provide for and require the payment of taxes on franchises, and to prescribe the method for the return and payment of said taxes," and that the Comptroller-General "is threatening and is about to proceed to collect said illegal taxes." The petitioner in said bill averred that said purpose and attempt to collect said taxes are illegal and void, because the petitioner's charter is a contract between the petitioner and the State of Georgia, and by said contract the State bound itself to exact no taxes from the petitioner on account of its investments in the charter tax lines of railroad aforesaid exceeding one-half of one percent of the net earnings of said investments, and said threatened action of said Comptroller-General and said act of the General Assembly of December 17, 1902, would impair the obligation of said contract, and are unconstitutional under paragraph 1 of article 10 of the amendment to the United States Constitution. The petitioner prayed that it be adjudged that it is liable only for a tax to the State not exceeding one-half of one percent of the petitioner's investments in its railroad, and that the defendant Comptroller-General be enjoined from proceeding to collect any other tax from the petitioner. On July 3, 1907, said circuit court entered a decree in said case enjoining the Comptroller-General as prayed. The Comptroller-General appealed to the Supreme Court of the United States from said decree, and by a decision rendered February 21, 1910, 216 U.S. 420
(30 Sup. Ct. 242, 54 L. ed. 544), that court affirmed the decree in so far as it related to the property referred to as the petitioner's charter tax lines, and reversed it only in so far as it related to the petitioner's branch line from Barnett to Washington, Georgia, which petitioner does not now include in its charter tax lines. Excerpts from the decision of the United States Supreme Court are contained in this paragraph of the petition, which paragraph *Page 148 
concludes as follows: "Petitioner attaches hereto as Exhibit A a copy of the entire record of said case [in the said Circuit Court and in the United States Supreme Court], and pleads the final judgment in said case as res adjudicata of the issues in this case that the lines described in this petition as charter tax lines are not subject to ad valorem taxes, but are taxable only on their net income under the special provisions of petitioner's charter, and petitioner also pleads said judgment as an estoppel upon said issues."
21. By section 78 of the act approved August 28, 1931 (Ga. L. 1931, pp. 7 et seq.), a State Revenue Commission was created, consisting of the Comptroller-General and two Commissioners, and by section 4 of the act approved January 3, 1938 (Ga. L., Ex. Sess., 1937-38, pp. 77 et seq.), the State Revenue Commissioner was vested with all the power and authority, and was required to perform all the duties formerly vested in the State Revenue Commission, with certain exceptions not here material, and was also vested with all power and authority and was required to perform all the duties relating to taxation theretofore vested in any State administrative official or State department, so that now all duties with respect to the taxes assessed against the petitioner have devolved upon the defendant in this case, who in these respects is the successor in office of the former Comptroller-General.
22. The petitioner desires to contest the effort of the defendant to assess said property for taxation as hereinbefore set out, but is advised by counsel, and therefore alleges, that there are grave doubts and uncertainties as to the method to be followed in so doing, for the following reasons:
(a) The petitioner is advised that the defendant is proceeding under the act of 1918, page 232 (Chapter 92-61 of the Code), which provides for assessments against property owners failing to return or grossly undervaluing their property, and which provides, in § 92-6104, that a taxpayer who disputes the taxability of his property may raise the question by petition in equity in the Superior Court of Fulton County. Chapter 92-61 of the Code may not be applicable in this case because:
(1) The petitioner has not omitted to return its property for taxation for the years 1939-1945, inclusive, and has not undervalued *Page 149 
the property which it has returned for those years; and because:
(3) The act of 1918, page 232, or, at least, § 92-6104 of the Code, may have been repealed by the act of 1937-38, Extra Session, page 77, providing in section 44 for review by the Board of Tax Appeals of assessments made by the State Revenue Commission, and said provisions of said act of 1937-38 may, in turn, have been repealed, as to questions involving taxability, by the provisions of the act of 1941, page 200, withdrawing from the Board of Tax Appeals the right to review assessments by the State Revenue Commission except those entered by the commissioner on tax returns for ad valorem taxation required to be made to him.
(b) Both the act of 1918 and "the applicable provisions" of the act of 1937-38, page 77 (if the same have not been repealed by the act of 1941, page 200), may have been repealed by the act of 1943, page 204, which provides for a review of assessments made by the State Revenue Commissioner by appeal to the superior court of the county in which is located the taxpayer's principal place of doing business or in which the taxpayer's chief or highest corporate officer resident in this State maintains his office, which, in the petitioner's case, would be the Superior Court of Chatham County.
(c) The act of 1943, page 204, provides that nothing therein contained "shall be construed to deprive a taxpayer against whom an execution for taxes has been issued under an assessment by the State Revenue Commissioner of the right to resist enforcement of the same by affidavit of illegality." The act of 1931, page 7 (Code, § 92-7301), gave to a taxpayer the right to test the question whether a tax assessed by the State Revenue Commissioner was legally due, by affidavit of illegality, but the petitioner is advised that doubt exists as to whether that act was repealed by the act of 1937-1938 Extra Session, page 77, and, therefore, as to whether the petitioner would have the right to test the question whether this tax is legally due by affidavit of illegality. If said act of 1931 has been repealed, then there is doubt as to whether the petitioner would have the right to test by affidavit of illegality the question whether the taxes involved in this case are legally due, because the only other right given *Page 150 
to a taxpayer to file an affidavit of illegality is to be found in Code § 92-3604 ( § 92-2604?), and it has been held by the Supreme Court that such remedy is only open to taxpayers who have made their returns. While the petitioner contends that it has made returns of all its property subject to ad valorem taxation, the defendant contends that it has not.
23. For the reasons set forth in the foregoing paragraph, the petitioner's remedy to contest its liability for the assessment which the defendant proposes to make, by or through any statutory proceeding or proceedings at law, is highly doubtful and uncertain, and the petitioner can not safely risk an adjudication as to the proper remedy by following either the procedure outlined in § 92-6104 of the Code, or the procedure outlined by the act of 1938 as it has been amended, for the reason that, once the assessment is made, the taxpayer must present the appeal under the act of 1938, as amended, within thirty days. Thus if the petitioner seeks to contest the taxability of said property by a petition in equity, as authorized by § 92-6104 of the Code, and it should be determined that that section and the procedure there authorized have been repealed or superseded by the act of 1938, it would then be too late to appeal from the assessment. On the other hand, if the petitioner should appeal from the assessment within thirty days, and it should thereafter be determined that the petitioner's remedy was by following the procedure outlined in § 92-6104 of the Code, with the result that the petitioner's appeal would be dismissed, the petitioner would then be in danger of its petition in equity being barred on account of laches. "If petitioner should thus be placed in a position in which neither the procedure outlined in Code § 92-6104 nor that outlined in §§ 92-8426-d and 92-8446 was open to it, it is doubtful, for the reasons hereinbefore stated, whether petitioner could proceed by affidavit of illegality, so that petitioner might be remediless."
24. An actual controversy exists between the petitioner and the defendant as to the matters and things set forth in this petition. The petitioner contends that its charter tax lines are not subject to ad valorem taxation by the State or any of its political subdivisions and are not subject to any other form of taxation save that provided by the petitioner's charter, and that this is *Page 151 
true despite the act of 1874, and article 1, section 3, paragraph 3, of "the Constitution of 1877, as amended August 7, 1945." The defendant contends that under the Constitution of 1877 and under said act of 1874 the charter tax lines of the petitioner are subject to ad valorem taxation to the same extent as other lines of the petitioner upon which it has already paid ad valorem taxes. The defendant further contends that, whether or not the charter tax lines were subject to ad valorem taxation under the Constitution of 1877, or under said act of 1874, said charter tax lines are subject to such ad valorem taxation under the Constitution of 1945, and that said Constitution is retrospective and retroactive in operation and subjects said charter tax lines to ad valorem taxation for years antedating the adoption of the Constitution of 1945, as well as for future years. The petitioner contends that said Constitution of 1877 as amended in 1945 is by its terms prospective only in operation and effect, with the result that it does not purport to subject said charter tax lines to taxation for years antedating the amendment of 1945, and that in so far as it undertakes or seeks to subject them to taxation for future years, it is unconstitutional because violative of article 1, section 10, paragraph 1 of the Constitution of the United States, for all of the reasons hereinbefore stated. With respect to the years 1939 to 1945 the controversy between the petitioner and the defendant is not only actual but acute, in that the defendant has stated his purpose to assess taxes against the petitioner for all of said years, has threatened to do so, and will do so unless enjoined. As to future years, the controversy is actual because the defendant has threatened to and will assess taxes against said charter tax lines for all future years.
25. The defendant is proceeding to assess the petitioner's property for ad valorem taxation for the years 1939 through 1945, for State, county, municipal and school taxes, and will so assess same unless the rights of the parties are determined before assessment can be made, and, if they are not determined before said assessment can be made (and it is most unlikely that they can be), the defendant will proceed to issue executions against the petitioner for the ad valorem taxes which he claims to be due for each of the seven years involved, and to levy said executions on the petitioner's property unless he is enjoined. *Page 152 
26. If the defendant is not enjoined as hereinafter prayed, he will proceed to assess the petitioner's charter tax lines for ad valorem taxation for the years 1939-1945, inclusive. If the petitioner's remedy against said assessment should be held in this proceeding to be under the provisions of the act of 1938 as amended, the petitioner's appeal from said assessment must be entered within thirty days, failing which the petitioner will be remediless. It is, therefore, necessary that the defendant be restrained from assessing said property in order that the present status may be maintained and the petitioner's rights preserved.
27. Wherefore, the petitioner brings this suit, as authorized by the act of the General Assembly of Georgia of 1945, known as the Declaratory Judgment Act, and shows that it is entitled to have this court determine and declare the rights and liabilities of the parties with respect to the controversy hereinbefore described, and particularly with reference to the taxability of the property referred to in this petition which the defendant proposes to and will assess for taxation as herein alleged, and that it is also entitled to such other and further relief as will eventually preserve and prevent violation and impairment of the contracts herein described.
Waiving discovery, the petitioner prays:
(1) That the court will determine, adjudicate and declare:
(a) That the petitioner's charter tax lines hereinbefore described are exempt from ad valorem taxation for the years 1939-1945, both inclusive, and are not otherwise taxable except in the manner and method provided in the petitioner's charter.
(b) That the defendant is without authority of law to enter ad valorem assessments against the petitioner or said property, and that such assessments, if undertaken to be entered, will be void for all of the reasons stated in this petition.
(c) That the judgments entered in the cases heretofore decided by the Supreme Courts of Georgia and of the United States, which are referred to in the foregoing petition, are res adjudicata and constitute a final and conclusive determination forever binding upon the State of Georgia and its public officials as to the taxability of said property.
(d) That the court determine and declare that the defendant and his successors in office and all persons who are or may hereafter *Page 153 
be charged with the duty of assessing and collecting taxes within the State of Georgia or any political subdivision thereof, should be perpetually enjoined from assessing said property for such taxation or endeavoring in any manner to collect ad valorem taxes thereon.
2. That, if the decree of this court should be such that the rights and legal relations of the parties hereto can only be adjudicated in another proceeding now provided by the laws of Georgia, then this court will determine, adjudicate, and declare whether the taxability of the petitioner's charter tax lines can be determined by petition in equity to the Superior Court of Fulton County under the provisions of § 92-6104 of the Code, or by appeal from the defendant's assessment to the superior court of the county in which is located the petitioner's principal place of doing business or in which the petitioner's chief or highest corporate officer, resident in this State, maintains an office, "under the provisions of sections 92-8446-d and 8446 of the Code of 1933 [ §§ 92-8426.4, 92-8446, Ann. Code Supp.?], and also whether petitioner has the additional right to determine said question by affidavit of illegality."
3. That pending a determination of the questions presented by this petition and the declaration of the rights and liabilities of the parties with respect to the taxability of said property and the remedy to be pursued by the petitioner in contesting an assessment thereof by the defendant, the defendant as State Revenue Commissioner, and his successors in office, be restrained and enjoined from assessing said property or any of same for ad valorem taxation for the years 1939 to 1945, inclusive, or any future years.
4. That pending a hearing and until further order of court, the defendant be temporarily restrained as prayed for in the foregoing paragraph.
5. For process.
6. For rule nisi as to injunction.
7. For general relief.
Downing Musgrove having succeeded Glenn S. Phillips as State Revenue Commissioner on June 10, 1948, and having moved on June 11 to be substituted as plaintiff in error, he was by order of this court, counsel on both sides consenting, substituted as *Page 154 
plaintiff in error for Glenn S. Phillips, and was made "a party to this case in exactly the same capacity as Glenn S. Phillips would have continued to be a party to it had he continued in the office of State Revenue Commissioner of the State of Georgia."
The parties will be generally referred to herein as plaintiff and defendant, as they appeared in the trial court.
The third ground of the general demurrer filed by the original defendant, then State Revenue Commissioner, and adopted by his successor, who was substituted as a party defendant, asserted that the suit "is in reality an action against the State of Georgia, and the State of Georgia has not consented to be made a party to this action or for the action to proceed against it." The defendant urges the same contention (among others) in this court, having excepted to the judgment overruling all grounds of demurrer to the petition as amended.
In the very nature of the contention stated, it is the first matter for consideration, for if this ground of demurrer was good, the judgment should be reversed without any decision upon other questions. In other words, if the suit is in reality an action against the State and the State has not consented to be thus sued, it would be entirely out of place to decide anything as to liability of the State in such proceeding.
The plaintiff does not claim that the State has in fact consented to be sued in this case, but, as to this phase, it simply contends that the suit is against the defendant as an individual, and is therefore not a suit against the State.
The suit was originally brought against the defendant "in his representative capacity as State Revenue Commissioner of the State of Georgia," but this express denomination was later stricken by amendment. Whether or not, in view of other references *Page 155 
to the defendant as an official which remained in the petition after such amendment, it could be said that the petition as amended is in name a suit against the defendant solely in his individual capacity, is immaterial, if upon a consideration of the petition as a whole, including the relief which it seeks, it appears that the action is in reality a suit against the State, brought without its consent. "Where a suit is brought against an officer or agency of the State with relation to some matter in which the defendant represents the State in action and liability, and the State, while not a party to the record, is the real party against which relief is sought, so that a judgment for plaintiff, although nominally against the named defendant as an individual or entity distinct from the State, will operate to control the action of the State or subject it to liability, the suit is in effect one against the State." Cannon v. Montgomery,184 Ga. 588 (1), 591 (192 S.E. 206). See also Roberts v.Barwick, 187 Ga. 691 (2) (1 S.E.2d 713); Florida StateHospital for the Insane v. Durham Iron Co., 194 Ga. 350
(21 S.E.2d 216); Fleisher v. Duncan, 195 Ga. 309 (1) (24 S.E.2d 15). The statement just quoted accords with the generally accepted rule, and we are of the opinion that the present suit is an action against the State within this rule. See, in this connection, 29 Am. Jur. 304-310, §§ 92-94.
The plaintiff railroad company was chartered by an act of the legislature in 1833, section 15 of which provided: "The stock of the said company and its branches shall be exempt from taxation for and during the term of seven years from and after the completion of the said railroads or any one of them: and after that, shall be subject to a tax not exceeding one-half percent per annum on the net proceeds of their investments." Ga. L. 1833, p. 256.
The company alleges that the defendant has demanded full and complete tax returns for the years 1939 through 1945, and will, unless enjoined assess against the petitioner ad valorem taxes with respect to its charter tax lines; also that "An actual controversy exists between petitioner and the defendant as to the matters and things set forth in this petition." On its part, the plaintiff contends and alleges that the quoted provision of its charter constitutes a contract between it and the State of Georgia *Page 156 
exempting it from all ad valorem taxation; and it prays for a declaratory judgment adjudicating that such alleged contract does exist, and that it is irrevocable and inviolable. It also asks that certain previous decisions, State of Georgia v. Ga. R. Bkg. Co., 54 Ga. 423; Georgia Railroad Banking Co. v. Wright, 132 Fed. 912; Wright v. Ga. R. Bkg. Co., 216 U.S. 420
(30 Sup. Ct. 242, 54 L. ed. 544), be established as res judicata in its favor and binding as against the State of Georgia and its officials as to the taxability of its railroad properties described in the petition It further prays for a perpetual injunction against the defendant and his successors in office restraining them from assessing such properties for ad valorem taxation and from endeavoring in any manner to collect ad valorem taxes thereon. All of this, be it remembered, is based upon the contention that the provision as to exemption is a contract between the plaintiff and the State of Georgia, valid and binding in perpetuity, so that the plaintiff is thus seeking a decree that would control the action and liability of the State and its officers forever, with respect to such matter.
The plaintiff alleges that the defendant claims to be proceeding under an act of the General Assembly passed in 1874 (Ga. L. 1874, p. 107) entitled "An Act to amend the tax laws of this State, so far as the same relate to railroad companies, and to define the liability of such companies to taxation, and to repeal so much of the charters of such companies, respectively, as may conflict with the provisions of this act," and under article 1, section 3, paragraph 3 of the Constitution of 1945, declaring that "All exemptions from taxation heretofore granted in corporate charters are declared to be henceforth null and void." The petition then attacks such statute as being unconstitutional and void under the contract clause of the State and Federal Constitutions, and also assails the quoted provision of the Constitution of 1945 as being in violation of such contract clause as contained in the Federal Constitution. Therefore, it is insisted by the plaintiff that the defendant is acting wholly without lawful authority, and hence that he is sued, and is properly sued, as an individual. It is thus contended that the suit is one against the defendant in his individual capacity and is not an action against the State. *Page 157 
It is a well-recognized general rule that a suit to restrain a State official from executing an unconstitutional statute in violation of the plaintiff's rights and to his irreparable damage is not a suit against the State, for in such a case the officer is stripped of his official or representative character and is subject in his person to the consequences of his individual conduct. See, in this connection, Dennison Mfg. Co. v.Wright, 156 Ga. 789 (120 S.E. 120); Ex parte Young, 209 U.S. 123,160 (28 Sup. Ct. 441, 52 L. ed. 714, 13 L.R.A. (N.S.) 932, 14 Ann. Cas. 764); Greene v. L. N. R. Co., 244 U.S. 499
(37 Sup. Ct. 673, 61 L. ed. 1280, Ann. Cas. 1917E, 88); Sterlingv. Constantin, 287 U.S. 378 (53 Sup. Ct. R. 190,77 L. ed. 375).
Seemingly, the same principle would apply where the officer claims to act under a provision of the State Constitution, provided such provision is void as being in violation of the United States Constitution, and is duly challenged. It has no application in the instant case, however, for, as shown above, the plaintiff is here seeking to enforce what it claims to be a contract with the State of Georgia, and the State therefore, as a corporate entity, has a distinct and direct interest in the subject-matter of the litigation, as distinguished from its mere governmental interest in the enforcement of its laws for the general welfare.
In Hampton v. State Board of Education, 90 Fla. 88
(105 So. 323, 42 A.L.R. 1456), it was said: "The rule which forbids a suit against State officers because in effect a suit against the State applies only where the interest of the State is through some contract or property right, and it is not enough that the State should have a mere interest in the vindication of its laws, or in their enforcement as affecting the public at large or the rights of individuals or corporations; it must be an interest of value in a material sense to the State as a distinct entity. Thus a suit against the Governor of a State, not by name, but solely in his official character, is a suit against the State; so also is a suit against State officers for the purpose of enforcing through them the performance of the contracts of the State, or to compel them to do acts which would impose contractual liabilities upon the State." See also the following decisions of the United States Supreme Court, where alleged contracts of States were involved: In re Ayers, 123 U.S. 443 (8 Sup. Ct. R. 164,31 L.ed. 216) *Page 158 
Hans v. Louisiana, 134 U.S. 1 (10 Sup. Ct. R. 504,33 L. ed. 842); North Carolina v. Temple, 134 U.S. 22 (10 Sup. Ct. R. 509, 33 L. ed. 849); Gunter v. Atlantic Coast Line R. Co.,200 U.S. 273, 285 (26 Sup. Ct. 252, 50 L. ed. 477). The last-mentioned case involved a claimed charter tax exemption. See also, in this connection, Roberts v. Barwick, 187 Ga. 691
(supra); Florida State Hospital v. Durham Iron Co., 194 Ga. 350
(supra); 49 Am. Jur. 308, § 94; 59 C. J. 307, § 464. We are unable to see how the plaintiff railroad company could have an actual controversy with the defendant in his individual capacity with reference to the matters set forth in the instant petition.
Section 6 of the Declaratory Judgment Act provides: "No declaration shall prejudice the rights of persons not parties to the proceeding. In any proceeding involving the validity of a municipal ordinance or franchise, such municipality shall be made a party and shall be entitled to be heard as a party. If a statute of the State, or any order regulation of any administrative body of the State, or any franchise granted by the State is alleged to be unconstitutional, the Attorney-General of the State shall be served with a copy of the proceeding and shall be entitled to be heard." Ga. L. 1945, 137, 138; Code (Ann. Supp.), § 110-1106. In the instant case, the court ordered that the Attorney-General be served with a copy of the suit. The provision referred to, however, does not amount to consent of the State to be sued under such statute; nor has the plaintiff so contended. Compare Roberts v. Barwick, 187 Ga. 691 (supra).
In view of what has been said, we conclude that the present suit is in substance and effect an action against the State, and that it is not maintainable, the State not having consented to be thus sued. In the following cases the question here under consideration does not appear to have been raised by counsel or considered by the court. Georgia Railroad Banking Co. v.
Wright, 132 Fed. 912; Wright v. Georgia Railroad Banking Co.,216 U.S. 420 (supra). These cases are therefore to be considered only as physical precedents, with little, if any, persuasive force, as to such question. There may be still other cases that would be subject to the same observation.
We do not overlook the plaintiff's allegations to the effect that there are grave doubts and uncertainties as to what remedy it *Page 159 
may pursue in contesting the effort of the defendant to assess its charter lines for ad valorem taxation. The petition referred to several statutes of this State relating to remedy, including injunction and affidavit of illegality, to wit: Ga. L. 1918, p. 232; Ga. L. Ex. Sess. 1937-38, p. 77; Ga. L. 1941, p. 200; Ga. L. 1943, p. 204, and prayed for a declaratory judgment as to remedy. The petition was not aided by such allegations and prayer with respect to remedies; for if, as we have held, the suit is in essence one against the State, no judgment should be rendered declaring what remedy or remedies would be available as against it, if any, as that would be a decision at least in part against the State, even though it has not consented to be sued, and is not even a party.
In Beers v. Arkansas, 61 U.S. 527, 529 (15 L. ed. 991), it was said: "It is an established principle of jurisprudence in all civilized nations that the sovereign can not be sued in its own courts, or in any other, without its consent and permission; but it may, if it thinks proper, waive this privilege, and permit itself to be made a defendant in a suit by individuals, or another State. And as this permission is altogether voluntary on the part of the sovereignty, it follows that it may prescribe the terms and conditions on which it consents to be sued, and the manner in which the suit shall be conducted, and may withdraw its consent whenever it may suppose that justice to the public requires it." See also, in this connection, Great Northern Life Ins. Co. v. Read, 322 U.S. 47 (64 Sup. Ct. R. 873,88 L. ed. 1121); Ford Motor Co. v. Department of Treasury of Indiana,323 U.S. 459 (65 Sup. Ct. R. 347, 89 L. ed. 389); Goldsmith v.Augusta Savannah R. Co., 62 Ga. 468, 472; Goldsmith v.Georgia R. Co., 62 Ga. 485, 494.
Nothing said in this opinion is intended as an expression or intimation upon any question relating to the merits of the plaintiff's contention as to exemption from ad valorem taxation, or upon any question as to what remedy, if any, the plaintiff might have if any of its money or property should be seized or levied upon for such taxes; the defendant having now done nothing more than threaten to make assessments — according to the allegations of the petition.
It follows from what has been said that the court erred in overruling ground 3 of the general demurrer to the petition. The *Page 160 
judgment overruling the demurrer on all grounds, whether general or special, should be vacated, and ground 3 of the general demurrer should be sustained and the petition dismissed, without any ruling or judgment as to other grounds, and without prejudice to either party or the State with respect thereto. And direction is given accordingly.
Judgment reversed, with direction. All the Justices concur,except Wyatt, J., absent on account of illness, and Head, J.,disqualified.