41940. McCOY v. SANDERS, Governor, et al.

566

*Adair, Goldthwaite, Stanford, Daniel & Horn, T. Emory Daniel,* for appellant.

*Arthur K. Bolton, Attorney General, Richard L. Chambers, E. J. Summerour, Assistant Attorneys General, A. R. Barksdale,* for appellee.

EBERHARDT, Judge. We affirm. We are of the opinion, as was conceded by counsel for appellant on oral argument, that there could be no question but that the officers seeking to locate the body of the murder victim were acting under the police powers of the State.

"The police power is that inherent and plenary power in the state over persons and property, when expressed in the legislative will, which enables the people to prohibit all things inimical to the comfort, safety, health, and welfare of society, and is sometimes spoken of as the law of overruling necessity." 23 Ill.

Law R. 186. "Police powers have their origin in the law of necessity," and "are inherent in every sovereignty." Prentice, Police Powers (1894) pp. 4, 6. The power extends to "the protection of the lives, health and property of the citizen, and to the preservation of good order and public morals," Northwestern Fertilizing Co. v. Village of Hyde Park, 97 U.S. 659, 669 (24 LE 1036), is not subject to any definite limitations, but is coextensive with the necessities of the case and the safeguard of the public interest. Camfield v. U. S., 167 U.S. 518 (17 SC 864, 42 LE 260). It includes the "prevention and punishment of injuries and offenses to the public." People v. Brazee, 183 Mich. 259 (149 NW 1053).

It is not to be confused with the power of eminent domain, under which property is acquired for the making of public improvements upon condition that the owner be compensated for the taking or damaging of his property. "This police power or the law of overruling necessity is not controlled by the constitutional limitation that private property shall not be taken for public use without compensation, which was not designed for, and should not be extended to such cases." Prentice, Police Powers, supra, p. 6. And see, 2 Kent Com. 338; Bl. Com. IV, 30.

"Under certain circumstances and conditions, a municipality may, acting under its police power for the general welfare of the public, take or use the property of a person or corporation without paying compensation therefor . . ." *Atlantic C.L.R. Co. v. Southern R. Co.*, 214 Ga. 178, 182 (104 SE2d 77). Cf. *Crum v. Bray*, 121 Ga. 709 (49 SE 686); *Curtis v. Town of Helen*, 171 Ga. 256 (155 SE 202); *Hall v. Twin City*, 203 Ga. 52 (45 SE2d 412); *Frank v. City of Atlanta*, 72 Ga. 428; *Dunbar v. City Council of Augusta*, 90 Ga. 390 (17 SE 907); *Americus v. Mitchell*, 79 Ga. 807 (5 SE 201); *City of Macon v. Southern Bell T. & T. Co.*, 89 Ga. App. 252, 267 (79 SE2d 265). "Uncompensated obedience to a regulation enacted for the public safety under the police power of the State is not a taking or damaging without just compensation of private property, or of private property affected with a public interest." *Cleveland v. City Council of Augusta*, 102 Ga. 233, 240 (29 SE 584).

At common law the State might destroy buildings in an effort to stop the spread of a conflagration under its police power, and

the owner was entitled to no compensation. 2 Kent Com. 339; Bowditch v. Boston, 101 U. S. 16 (25 LE 980); United States v. Caltex, 344 U. S. 149 (73 SC 200, 97 LE 157). A statutory provision for payment, however, may be provided. See *Code* § 88-401. In Georgia this was done from the adoption of the first Code in 1863, until the statute was apparently repealed by Ga. L. 1964, pp. 499, 650. Being in derogation of the common law, a strict construction of the statute was required and it could not be extended beyond the express provisions. Bowditch v. Boston, supra; Klamath and Moadoc Tribes v. United States, 296 U. S. 244, 250 (56 SC 212, 80 LE 202). Provision was made for payment only when houses are destroyed to prevent the spread of fire or of contagious diseases, and there have been instances when compensation was paid under it. See *Town of Dawson v. Kuttner,* 48 Ga. 133; *Vandevender v. City of Atlanta,* 150 Ga. 443 (104 SE 227). But a feather bed on which a victim of scarlet fever had slept was destroyed as a nuisance and without payment of compensation. *Mayor &c. of Savannah v. Mulligan,* 95 Ga. 323 (22 SE 621). See generally Saye, The Tort Liability of Municipalities in Georgia, 17 G.B.J. 456; Sentell, The Law of Municipal Tort Liability in Georgia (1964), p. 131.

In a general way the police power extends to all the great public needs. It may be put forth in the aid of what is sanctioned by usage, or held by the prevailing morality of strong and preponderant opinion to be greatly and immediately necessary to the public welfare.

"[F]or the state or a municipal corporation to take private property without compensation, *except where it does so under a valid exercise of the police or other sovereign power,* constitutes a deprivation of property without due process of law within the meaning of the Fourteenth Amendment." (Emphasis supplied). 5 McQuillin on Municipal Corporations (3d Ed.) p. 519, § 19.19.

But the exercise of police power is not so proscribed, for "neither the [Fourteenth] Amendment—broad and comprehensive as it is—nor any other amendment, was designed to interfere with the power of the State, sometimes termed its police power . . ." Barbier v. Connolly, 113 U. S. 27, 31 (5 SC 357,

28 LE 923). "It is the most essential of powers, at times the most insistent, and always one of the least limitable of the powers of government." District of Columbia v. Brooke, 214 U. S. 138, 149 (29 SC 560, 53 LE 941).

"All property is held subject to the police power of the State . . . The due-process clauses are not intended to limit the right of the State to properly exercise the police power in the enhancement of public safety . . . Damages can not be recovered by one because he incurs expense in obeying a police regulation enacted for the common welfare and safety of the public . . . The police power has never been surrendered by the State . . . [and] to the exercise of police power all rights of natural persons and corporations are subject." *Atlantic C. L. R. Co. v. State*, 135 Ga. 545, 557 (69 SE 725).

"The safeguarding of society by the prosecution of crimes against it is a sovereign attribute inherent in all governments, and for mistakes in exercising this sovereign right there can be no liability against the government without its consent." U. S. v. Keegan, 71 FSupp. 623.

The eminent domain provisions of the Constitution are, as we have observed, a thing apart from the police power. Under these the property owner is entitled to compensation if his property is taken or damaged "by reason of the construction or operation of any improvements made for the use of the public." *Campbell v. Metropolitan Street R. Co.*, 82 Ga. 320, 325 (9 SE 1078). And the "damage" to the property within the meaning of the Constitution is some physical interference with property or physical interference with a right to use appurtenant property in connection with an improvement for public use. *Austin v. Augusta Terminal R. Co.*, 108 Ga. 671 (34 SE 852).

"The power of eminent domain is that sovereign power to take property for a public use or purpose, and this cannot even be done without just and adequate compensation. On the other hand, the police power is that power by which the Government may destroy or regulate the use of property in order to 'promote the health, morals and safety of the community,' and the police power may be exercised without making compensation for the impairment of the use of property or any decrease in the value of

property . . ." Adams v. Housing Authority of City of Daytona Beach, (Fla.) 60 S2d 663.

The facts, including the nature of the damage done, in Gillmor v. Salt Lake City, 32 Utah 180 (89 P 714) are strikingly similar to those here. Holding that the city could not be held for damage done by its police in searching for the body, the Supreme Court of Utah asserted that the city and its officers were engaged in the discharge of a public duty as agents of the sovereign state, and that this was true whether the search was for the purpose of tracing crime or for safeguarding the public health and welfare. A similar result was reached in Sehy v. Salt Lake City, 41 Utah 535 (126 P 691) where the police officers sought to recover the body of a boy who had drowned in a stream.

In Tzatzken v. City of Detroit, 226 Mich. 603 (198 NW 214) recovery was denied for the acts of police officers who, without a warrant, searched plaintiff's home, took therefrom a quantity of liquor which was never returned, and in Savage v. District of Columbia, 52 A2d 120, the court held that there could be no recovery against the District for the acts of its police officers in breaking the door of plaintiff's premises and permitting third persons to take possession. In *Rogers v. City of Atlanta*, 143 Ga. 153 (84 SE 555) it was held that there could be no recovery against the city for the act of its fireman in cutting a hole in a building and leaving it in an exposed condition, this being in the performance of a public or governmental duty.

In all of these cases the recovery was denied because the officers were acting under the police or governmental power.

Concerning the State as a party defendant, it is well settled that no action can be maintained against it without its prior consent or a constitutional provision. *Roberts v. Barwick*, 187 Ga. 691 (1 SE2d 713); *Holcombe v. Georgia Milk Producers Confederation*, 188 Ga. 358 (3 SE2d 705); *Barwick v. Roberts*, 192 Ga. 783 (16 SE2d 867); *Musgrove v. Georgia R. & Bkg. Co.*, 204 Ga. 139 (49 SE2d 26). And see *Code* § 3-116. Nor can the suit be maintained against officials of the State in their official capacity without the consent of the State, for it is, in effect, a suit against the State. *Peeples v. Byrd*, 98 Ga. 688 (4) (25 SE 677); *Ramsey v. Hamilton*, 181 Ga. 365 (182 SE 392); *Cannon v. Montgomery*, 184 Ga. 588 (192 SE 206). It does not appear

from this petition that the State has waived its immunity from suit or that it has consented to be sued.

As to the county, no suit can be maintained against it unless there is a law which in express terms or by necessary implication so declares. *Millwood v. DeKalb County,* 106 Ga. 743 (32 SE 577); *Bates v. Madison County,* 32 Ga. App. 370 (123 SE 158). No statute authorizing the maintenance of this action has been brought to our attention, nor, under our conclusion that the action of the sheriff's office in seeking to locate the body of a murder victim was under and in the exercise of the police power, can it be maintained under any constitutional provision.

It has long been recognized that a loss suffered from the exercise of police power is *damnum absque injuria.* As was asserted by Justice Lumpkin in *Georgia Military Institute v. Simpson,* 31 Ga. 273, 277, "The appeal, therefore, for compensation must be to the public authority, and not to the courts. We have no Court of Claims in this State, nor petition of right as in England."[1]

Perhaps the time has come when a State Tort Claims Act, somewhat similar to the Federal Tort Claims Act of 1945, affording a legal remedy against the state or local government for these and other losses should be adopted. State, as well as Federal, government is now big business, operating in so many ways and to such extent that there is hardly a time or place when the citizen is not exposed to the danger of injury and damage from the actions of servants, agents and employees.

"The unexampled expansion of the police power in the United States daily illustrates the uncompensated sacrifices to which the individual is exposed by rightful operation of the State's public powers." Borchard, Government Liability in Tort, 34 YLJ 1.

*Judgment affirmed. Bell, P. J., and Jordan, J., concur.*

---

[1] To afford some remedy for this situation the General Assembly in 1952 created a Claims Advisory Board which, concurrently with the General Assembly, might authorize payment to one suffering the loss (Ga. L. 1952, p. 169). The board as constituted by that Act was abolished and another with similar functions created by the Act of 1963, now found in *Code Ann.* § 47-504, et seq. (Ga. L. 1963, p. 624). This remedy was open to the plaintiff, but he did not see fit to pursue it.