Harriett G. WEGNER, Respondent,

v.

MILWAUKEE MUTUAL INSURANCE COMPANY, Appellant,

The City of Minneapolis, Respondent.

No. C6–90–1400.

Court of Appeals of Minnesota.

Dec. 24, 1990.

Review Granted March 6, 1991.

William M. Drinane, St. Paul, for appellant.

James P. Westphal, Minneapolis, for Harriett G. Wegner.

Gail Langfield–Seiberlich, M. Alison Lutterman, St. Paul, for The City of Minneapolis.

Considered and decided by SCHUMACHER, P.J., and PARKER and KLAPHAKE, JJ.

## OPINION

KLAPHAKE, Judge.

Appellant Harriett Wegner challenges partial summary judgment determining that damage to her home caused by respondent City of Minneapolis was not a compensable taking. We affirm.

## FACTS

On August 27, 1986, Minneapolis police officers pursued a drug suspect in a high speed chase during which both the police and the suspect exchanged gunfire. The suspect eventually entered and barricaded himself in Wegner's home. The occupants of the home fled.

Officers on the scene called the Emergency Response Unit to assist. Police evacuated the area and over a four hour period (by telephone and bullhorn) sought the suspect's surrender. When it became dark and the suspect did not surrender voluntarily, the police fired tear gas and "flash bang" grenades into the house to flush him out. The officers finally entered the home and apprehended the suspect crawling out of a basement window. Wegner alleges the use of chemical munitions caused $71,000 in property damage.

Milwaukee Mutual Insurance Company (MMI) paid Wegner $28,005.14 for structural damage to the home. Wegner subsequently sued MMI and the City of Minneapolis to recover the remaining damages to her property. MMI cross-claimed against the City for reimbursement of the $28,005.14 paid to Wegner, and sought indemnification for any additional amounts to be paid. Both the City and MMI moved for summary judgment. The trial court granted the City's motion determining that there was no taking involved in the City's actions.

## ISSUE

Did the City's actions in extricating the suspect and thereby damaging Wegner's home constitute a compensable "taking" under article 1, section 13, of the Minnesota Constitution?

## ANALYSIS

On appeal from summary judgment, this court must determine whether there are any genuine issues of material fact and whether the trial court erred in applying the law. *Niccum v. Hydra Tool Corp.*, 438 N.W.2d 96, 98 (Minn.1989). Where the facts material to resolution of the litigation are not in dispute and as a matter of law compel only one conclusion, summary judgment is appropriate. *Illinois Farmers Ins. Co. v. Tapemark Co.*, 273 N.W.2d 630, 634 (Minn.1978).

To determine whether the City's actions constitute a compensable taking raises two questions. First, was Wegner's property "taken" for public use without just compensation? Second, if there was a taking, is Wegner denied compensation because the taking arose out of public necessity?

1. Was there a taking?

The fifth amendment to the United States Constitution provides in part: "nor shall private property be taken for a public use without just compensation." The fifth amendment takings clause applies to state and local governments through the due process clause of the fourteenth amend-

ment. *See First English Evangelical Lutheran Church of Glendale v. County of Los Angeles,* 482 U.S. 304, 310 n. 4, 107 S.Ct. 2378, 2383 n. 4, 96 L.Ed.2d 250 (1987). Moreover, nearly all of the state constitutions contain similar provisions. *See* Note, *A Proposal for Compensating Landowners for the Effects of Urban Redevelopment,* 5 Wm. Mitchell L.Rev. 165, 192 (1979). The prohibition against uncompensated takings

> was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.

*Armstrong v. United States,* 364 U.S. 40, 49, 80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554 (1960).

■ The Minnesota Constitution provides protection for property owners when property is "taken, destroyed or damaged for public use without just compensation." Minn.Const. art. 1, § 13. Thus, absent a de facto taking, landowners can recover damages if the government's actions constitute a damage to, rather than a full taking of, private property. *See id.* Minnesota courts have construed the term "damage" to mean an injury to property which deprives the owner of the ordinary use and enjoyment of the property. *See In re Hull,* 163 Minn. 439, 451–53, 204 N.W. 534, 538–39 (1925).

■ Here, the City significantly damaged Wegner's home. The police broke every window when they fired tear gas into Wegner's home. In addition, the tear gas contaminated the interior of the home and all of Wegner's belongings. This destruction deprived Wegner of the regular use and enjoyment of her home, and clearly falls within the "damages" clause of Minn. Const. art. 1, § 13.

■ Although Wegner's home was clearly damaged, Minn.Const. art. 1, § 13 provides compensation only if private property is taken for public use. The Minnesota Supreme Court has historically construed the words "public use" very broadly. *City of Duluth v. State,* 390 N.W.2d 757, 763 (Minn.1986). Public safety falls clearly within the ambit of public use. *State ex*

*rel. Twin City Bldg. & Inv. Co. v. Houghton,* 144 Minn. 1, 16, 176 N.W. 159, 162 (1920). Moreover, a city's ordering the destruction of property to apprehend an armed criminal has been held to be public use. *See Steele v. City of Houston,* 603 S.W.2d 786, 793 (Tex.1980); *cf. McDonald v. City of Red Wing,* 13 Minn. 38, 42 (1868) (stating that city's destruction of building was not for public use but private use because was for protection of private property in immediate neighborhood). Thus, Wegner's home was "taken" pursuant to Minn.Const. art. 1, § 13.

2. Is the taking compensable?

Whether the taking is compensable depends on the relationship between the City's police power and Wegner's constitutional right to compensation. The state's police power authorizes the City to act in the interest of public safety. *Alexander Co. v. City of Owatonna,* 222 Minn. 312, 331, 24 N.W.2d 244, 255 (1946) (overruled on other grounds). Merely because the City acted pursuant to its police power, however, does not mean that the damage caused to Wegner's home does not constitute a taking. *See Johnson v. City of Plymouth,* 263 N.W.2d 603, 607 (Minn. 1978). Instead, the issue here is whether the City's exercise of its police power was out of public necessity and therefore noncompensable.

■ If the City's damage to Wegner's home falls under the doctrine of public necessity, then the damage, even if a taking, is noncompensable. Generally, public necessity is defined as an imminent threat of harm to persons or property. *See generally,* Annotation, *Constitutional Rights of Owner as Against Destruction of Building by Public Authorities,* 14 A.L. R.2d 73, 74 (1950). This police power doctrine is limited to cases in which the action is necessary to avoid some serious—and usually immediate—public harm. Usually, the property destroyed had temporarily become dangerous and was likely to have been destroyed anyway. *See* W. Prosser, The Law of Torts, *Necessity,* § 24 (5th ed.

1984). The recurring fact patterns of cases involving the public necessity doctrine include fire, flood, pestilence and riot. *Id.*

The most familiar example of the exercise of the public necessity doctrine is in case of fire. As a general rule, the destruction of a building lying in the path of a fire to prevent the spreading of the fire is not a compensable taking of property for public use. *See McDonald*, 13 Minn. at 38. The historical rationale of this doctrine is that the rights of private property owners must be made subservient to the public welfare. *See* 1 J. Sackman, Nichols' The Law of Eminent Domain, *Nature and Origin of Power*, § 1.43[2] n. 3 (rev. 3rd ed. 1973).

■ Minnesota courts have not addressed whether damage to private property caused in the course of apprehending a dangerous criminal falls under the doctrine of public necessity. In a Georgia case, however, an owner of private property sued state law enforcement officers for damages caused when they drained a pond on his property in their search for a murder victim. *McCoy v. Sanders*, 113 Ga.App. 565, 566, 148 S.E.2d 902, 903 (1966). The Georgia court held that the state's actions were a reasonable exercise of police power making the damages noncompensable. *Id.* at 571, 148 S.E.2d at 906.

This case presents an even stronger example of the doctrine of public necessity. Here, the police were pursuing an armed suspect. The suspect had fired at several of the police officers. Once the suspect barricaded himself in Wegner's home, all of Wegner's neighbors had to be evacuated. Moreover, the police still had not apprehended the suspect by nightfall. The risk that the armed suspect would escape created a clear public necessity. Thus, we hold that the City's damage to Wegner's home is a noncompensable taking under the doctrine of public necessity.[1]

While we conclude the taking was noncompensable, we question whether it is equitable to have an innocent bystander bear the damage caused by police activity. The policy determination of who should bear the cost in cases such as this, however, is one best left to appropriate legislative bodies.

### DECISION

The City's actions damaging Wegner's home constituted a noncompensable taking. The trial court's grant of summary judgment is affirmed.

Affirmed.

---

1. This decision does not in any way address Wegner's pending tort action against the City.