S96A1745. DEPARTMENT OF TRANSPORTATION v. EDWARDS et al.
(482 SE2d 260)

THOMPSON, Justice.

The Georgia Department of Transportation (DOT) appeals from a judgment entered on a jury verdict in favor of plaintiff Rodney Edwards in this inverse condemnation action. Finding no reversible error, we affirm.

In 1987, Edwards purchased property in the southwest quadrant of the intersection of State Route 136 and East Armuchee Road in Walker County, where he operated a grocery and general merchandise store and gasoline business. At the time, State Route 136, which bordered the northern edge of Edwards' property, consisted of two lanes. The edge of the roadway was approximately 30 feet from the gasoline pumps on the north side of the store. The area between the store and State Route 136 was used by Edwards for parking and for servicing vehicles at the pumps. This dispute concerns the paving and striping of a turn lane in that area by DOT.

In March 1990, Edwards observed surveying activity on the road adjacent to his store, and he asked DOT's agents about its intentions. He also advised DOT that, in his opinion, his property extended up to the paved portion of State Route 136, and that DOT owned no right-of-way beyond the roadway. Despite repeated inquiries, Edwards was unable to learn anything further from DOT.

In October 1990, DOT moved paving equipment into the area

and Edwards again complained. He was assured by DOT district engineer Felton D. Rutledge that nothing would be done that day, and that DOT would send a representative on the following day to discuss the problem. Despite Rutledge's assurances, DOT's crew returned to Edwards' property that afternoon in the company of a State Patrol officer who threatened to arrest Edwards if he interfered with the paving. DOT paved and striped the turn lane that day.

Edwards' subsequent complaints to Rutledge and demands that the turn lane be removed were met with threats. Finally a meeting was held in December between Edwards and his attorney, and Rutledge and a representative from the Attorney General's office acting on DOT's behalf. When both Edwards and DOT claimed ownership of the property, DOT's attorney proposed that an independent survey be conducted. Edwards agreed and Richard D. Canaday, a registered land surveyor acceptable to both parties, was selected to determine the north boundary line of the Edwards property. After extensive investigation, Canaday concluded that the turn lane was constructed on property owned by Edwards.

Edwards demanded that DOT remove the turn lane and restore the property to its original condition, and that he be compensated for the taking and for consequential damages. When his demands were refused, Edwards filed suit against DOT and its district engineer, Rutledge, on a theory of inverse condemnation. He sought damages for the taking including consequential damages to his property and business through the date of trial; damages for trespass and nuisance; an injunction requiring the removal of the public road; and attorney fees and expenses of litigation. In its answer, DOT claimed ownership of the property pursuant to two right-of-way deeds acquired in 1931 and 1932, respectively; and by adverse possession under color of title by virtue of having maintained a turn lane in the same area in the late 1970's or early 1980's, for a period in excess of seven years. Asserting a continuing trespass and nuisance, DOT counterclaimed for damages and for injunctive relief to prohibit further trespass.

By special verdict, the jury determined that Edwards owned the property on which the turn lane was paved, and it relied on the Canaday survey to identify the boundary line between the south right-of-way of State Route 136 and Edwards' property. It awarded Edwards $200,000 as compensation for inverse condemnation, an injunction requiring DOT to remove the turn lane from the property, attorney fees and expenses of litigation. It rejected Edwards' claims for damages for nuisance, trespass and for punitive damages, and found no liability on the part of Rutledge.

1. DOT asserts that the trial court erred in denying its motion for directed verdict on several grounds. In reviewing the denial of a

motion for directed verdict, this Court must determine whether there is any evidence to support the jury's verdict. OCGA § 9-11-50 (a); *Howard v. Rivers*, 266 Ga. 185 (1) (465 SE2d 666) (1996).

(a) DOT asserts that the evidence offered by Edwards was legally insufficient to prove a taking.

Canaday testified at trial that he was employed to do an independent boundary survey, particularly to determine where Edwards' northern property line joins State Route 136. He received information from both parties, and conducted more than one thousand hours of research and field work. Canaday examined Edwards' chain of title beginning in 1870, through the present. He examined two right-of-way deeds through which DOT claimed the property, which were given to DOT's predecessor, the State Highway Department, in 1931 and 1932. The right-of-way deeds purported to convey a 100-foot strip, 50 feet on either side of a proposed centerline of State Route 136. However, Canaday determined that while the grantors of the 1931 and 1932 deeds owned property north of the centerline of the road as shown on those deeds, they had no ownership in the property south of the centerline. He concluded that neither grantor had any ownership in the property claimed by Edwards, and thus had no right-of-way to convey to the State. He was unable to confirm any other deed that granted a right-of-way at the location asserted by DOT. Canaday's conclusion, that the turn lane is on Edwards' property, is reflected on his plat of survey, which was admitted into evidence without objection. DOT offered no survey of its own to refute the Canaday survey.[1]

To establish title in Edwards, Canaday relied on the deed Edwards received in 1987 upon purchasing the property, as well as on a 1924 deed in Edwards' chain of title, which originally separated the store property as a separate tract. These deeds described the northern boundary line of Edwards' property as running along Lafayette-Villanow Road (the predecessor to State Route 136). Relying on *Walker v. Hill*, 253 Ga. 126 (317 SE2d 825) (1984), DOT asserts that the description of the boundary as running along a road for a specific distance was unambiguous as a matter of law and could not be modified by extrinsic evidence, including the mutual Canaday survey. In *Walker* there was undisputed evidence that the State's fee interest extended 50 feet east of the centerline of the road. The question was whether the property line in question ran from the edge or from the

---

[1] Nor did DOT prove its alternative claim that it acquired the property by prescription. While it was shown that the State may have maintained a turn lane on the property for some indeterminate period of time in the past, it failed to satisfy the statutory criteria that the private land "has come to be a public road by the exercise of unlimited public use for the preceding seven years or more." OCGA § 32-3-3 (c).

centerline of that roadway. Since the deed in *Walker* unambiguously described the property line as running from the margin of the road, we held that a mutual survey was not competent evidence to vary the terms of that deed.

In contrast to *Walker*, there was clear evidence that DOT's interest in the land did not extend 50 feet from the centerline. The Canaday survey was not offered to vary the terms of an unambiguous deed, as in *Walker*, but rather to establish the location of Edwards' north property line and the existing right-of-way line of State Route 136.

Since there was competent evidence that a taking had occurred, the motion for directed verdict was properly overruled on this ground.

(b) DOT submits that the trial court erred in denying a motion for directed verdict on the ground that the proof of damages was too speculative to permit consideration by the jury.

Edwards offered testimony of a licensed real estate and business appraiser. He was asked to value Edwards property just prior to the time the turn lane was paved. Using the income method, he took into consideration the monthly and annual income of the business since Edwards purchased it in 1987, income tax returns, and gross sales. He computed the entire business income from 1987 until October 1990 and recognized an upward trend. He calculated what a well informed purchaser would pay and a seller would take for the property in 1990, and estimated the fair market value of the property prior to the paving on October 25, 1990, to be $207,225. The appraiser recognized that construction of the turn lane impaired access to the property and to the gasoline pumps, and drastically reduced parking. Since two-thirds of the gross income of the business came from the sale of gasoline, the loss of access to the pumps had a considerable effect on the value of the property. The appraiser valued the total damage from the time of the taking until the time of trial attributable to the placement of the turn lane at $126,652 (i.e., value of the temporary taking of the land and the damage to the remaining property).

Elizabeth Edwards, wife of the plaintiff, operated the store and maintained its business records. She testified that upon purchasing the property in 1987, the Edwardses implemented a plan to expand the business. The business grew immediately, almost doubling within one year and thereafter increasing substantially until October 1990. But construction of the turn lane resulted in a steady decline, and had a "devastating" effect on the business. Based on her personal knowledge, Mrs. Edwards testified that in her opinion the property was worth $400,000 just prior to the taking, and that it had been damaged by $300,000 due to the placement of the turn lane.

Damages recoverable in an inverse condemnation are a substitute for the damages recoverable in a condemnation proceeding, and are measured by the same standard: "[T]he actual depreciation in market value of the premises resulting from the [taking] and the effect upon the property." *Fulton County v. Baranan*, 240 Ga. 837, 838 (1) (242 SE2d 617) (1978). "The constitution does not distinguish between permanent and temporary damage. . . . If the taking of a temporary easement can be shown by competent evidence to have diminished the fair market value of the land not taken, the owner is entitled to just and adequate compensation." *Hillman v. Dept. of Transp.*, 257 Ga. 338, 340 (359 SE2d 637) (1987).

Edwards offered both expert and lay evidence as to the fair market value of the property just prior to and after the taking. Evidence of business losses which resulted in a diminution in the value of the business was relevant to the issue of consequential damages to the remainder. *Buck's Svc. Station v. Dept. of Transp.*, 259 Ga. 825 (387 SE2d 877) (1990). The evidence of damages was not speculative; instead, it enabled the jury to estimate the amount of loss with reasonable certainty. See *Dept. of Transp. v. Martin*, 174 Ga. App. 616 (1) (331 SE2d 45) (1985). The trial court did not err in denying DOT's motion for directed verdict.

(c) It is asserted that the trial court erred in failing to grant a directed verdict with respect to Edwards' claim for attorney fees and expenses of litigation.

Edwards sought attorney fees and expenses of litigation under OCGA § 13-6-11.[2] Although attorney fees are not required as part of the just and adequate compensation to which a landowner is entitled when private property is taken for public use, *DeKalb County v. Trustees &c. Elks*, 242 Ga. 707 (251 SE2d 243) (1978), a *plaintiff* may in a proper case recover expenses under OCGA § 13-6-11 "where the condemnor has proceeded in bad faith. . . ." *DeKalb County v. Daniels*, 174 Ga. App. 319, 321 (6) (329 SE2d 620) (1985). Bad faith under this Code section must arise from the transaction upon which the complaint is based. See generally *Latham v. Faulk*, 265 Ga. 107 (2) (454 SE2d 136) (1995). Evidence of bad faith on the part of DOT was shown by its conduct in paving the property despite Edwards' claim of ownership and promises by its agents that it would conduct further investigation into the matter; and, over the next several years, refusing Edwards' demands that the turn lane be removed. Edwards' claim for expenses of litigation was properly submitted to the jury.

2. DOT asserts that the trial court's instruction pertaining to

---

[2] OCGA § 13-6-11 authorizes a jury to award expenses of litigation "where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense. . . ."

attorney fees and expenses of litigation was erroneous because it failed to contain a definition of "bad faith." Although DOT generally objected to the charge as given on the ground that the jury was not authorized to award expenses of litigation, we find no specific objection on the ground now asserted, nor any request at trial that "bad faith" be defined. Nevertheless, the charge, which tracts the language of OCGA § 13-6-11, was not erroneous.

3. Canaday was permitted to testify that in preparing his survey, he relied in part, upon a plat prepared in 1920 by Walker County surveyor A. C. Veatch. The Veatch plat was admitted over DOT's objection that it was not properly authenticated because it lacked the surveyor's seal and could only be introduced through the actual preparer. Canaday testified that he did independent research to confirm the accuracy of the distances and property outlines, and he found other deeds with the same dimensions and property locations as were contained in the Veatch plat.

> As an expert witness, the surveyor . . . may base his opinion on hearsay and may be allowed to testify as to the basis for his findings. [Cits.] When an expert's testimony is based on hearsay, the lack of personal knowledge on the part of the expert does not mandate the exclusion of the opinion, but rather, presents a jury question as to the weight which should be assigned the opinion. The evidence should go to the jury for whatever it's worth. [Cits.] Similarly, documentary evidence illustrative of oral testimony and authenticated by oral testimony is admissible. [Cits.] Further, where the admissibility of such evidence is doubtful, it should be admitted and its weight left to the jury.

*King v. Browning*, 246 Ga. 46 (268 SE2d 653) (1980). See also *Fountain v. DeKalb County*, 154 Ga. App. 302 (3) (267 SE2d 903) (1980). Since Canaday verified the accuracy of the Veatch plat by other documents, its admission into evidence was not erroneous for the reasons asserted. See generally *Bagley v. City of Alma*, 178 Ga. App. 474 (1) (343 SE2d 740) (1986); *Panos v. Dept. of Transp.*, 162 Ga. App. 53 (6) (290 SE2d 295) (1982). The weight to be accorded the evidence was properly left to the jury, under proper instructions.

4. Asserting that Edwards cannot recover damages as just and adequate compensation for the temporary taking of his property *and* obtain an injunction to restore the property to him, DOT contends that the trial court erred in entering judgment on the verdict.

Edwards sought and was awarded damages for the temporary taking of his property until the time of trial. See *Hillman*, supra. He was also entitled to injunctive relief to obtain the return of his prop-

erty which DOT had wrongfully appropriated. Recovery of damages for the temporary taking as well as an injunction requiring return of the property, did not, as DOT suggests, constitute a double recovery. See generally *Reid v. Gwinnett County*, 242 Ga. 88 (249 SE2d 559) (1978) (property owner entitled to damages as well as injunctive relief for continuing nuisance); *Fulton County v. Baranan*, supra at (3) (plaintiff has right to compensation for temporary damages and injunction to abate a nuisance); *City of Cordele v. Hobby*, 240 Ga. 207 (240 SE2d 16) (1977) (plaintiff entitled to injunctive relief and damages for trespass).

*Judgment affirmed. All the Justices concur, except Carley, J., not participating.*

DECIDED MARCH 3, 1997 —
RECONSIDERATION DENIED APRIL 3, 1997.

*Michael J. Bowers, Attorney General, George P. Shingler, Deputy Attorney General,* for appellant.

*Pursley, Howell, Lowery & Meeks, Charles N. Pursley, Jr.,* for appellees.