S04A1454. MANN v. THE STATE.

(603 SE2d 283)

SEARS, Presiding Justice.

Appellant Anthony Mann appeals the denial of his request for declaratory relief that would hold OCGA § 42-1-13, which prohibits registered sex offenders from living within 1,000 feet of specified places, unconstitutional. Finding no merit to appellant's contentions, we affirm.

In March 2002, appellant pled nolo contendere to a North Carolina charge of taking indecent liberties with a child. He then returned to Georgia, took up residence in his parents' home of 37 years, and began serving a probated sentence. Appellant also registered, as required by law, with the Georgia Sex Offender Registry.[1]

In June 2003, OCGA § 42-1-13 took effect, prohibiting convicted sex offenders who are required to register with the Sex Offender Registry from residing within 1,000 feet of a child care facility, a school, or any area where minors congregate. In August 2003, appellant's probation officer notified him that because he was living within 1,000 feet of a child care facility in violation of section 42-1-13, he would be required to vacate his residence.

Appellant filed suit, seeking declaratory relief that would render OCGA § 42-1-13 ("the Residency Statute") unconstitutional, and he appeals from the denial of such relief.

1. Appellant's claim that the Residency Statute violates the United States Constitution's proscription against ex-post facto laws has recently been rejected by this Court.[2]

---

[1] See OCGA § 42-1-12.

[2] *Thompson v. State*, 278 Ga. 394 (603 SE2d 233) (2004).

2. Appellant claims the Residency Statute unconstitutionally permits a regulatory taking without just and adequate compensation, in violation of the Fifth and Fourteenth Amendments to the United States Constitution. We disagree.

Even where governmental action does not occupy or encroach upon privately-owned property, the property's use still may be impacted such that a taking is deemed to have occurred.[3] For instance, a regulation that "denies all economically beneficial or productive use of land" will require compensation.[4] Regulations that fall short of eliminating property's beneficial economic use may still effect a taking, depending upon the regulation's economic impact on the landowner, the extent to which it interferes with reasonable investment-backed expectations, and the interests promoted by the government action.[5] When considering these factors, courts must remain mindful that the Takings Clause is intended to prevent the government from " 'forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.' "[6]

In this appeal, appellant's property interest is minimal. As discussed above, appellant was residing in his parents' home when informed he had to relocate. Appellant had no ownership interest in the home, nor is there any evidence of a written lease agreement between appellant and his parents, although appellant claims he paid "rent" by performing work around the home and sharing in household expenses. At best, appellant's living arrangement was a tenancy-at-will, subject to termination at any time, with or without cause.

Furthermore, nothing in the record indicates that the Residency Statute has interfered with reasonable investment-backed expectations relative to the property at issue. In fact, we find no indication that appellant had any economic stake in the property, and the Statute's sole economic impact was to require his relinquishment of the living arrangement he enjoyed at his parents' home and to relocate.[7]

In contrast to these slight considerations, the State's interests underlying the Residency Statute are considerable. The Statute is

---

[3] *Pennsylvania Coal Co. v. Mahon*, 260 U. S. 393, 415 (43 SC 158, 67 LE 322) (1922) (while property may be regulated to a certain extent, if a regulation goes too far it will be recognized as a taking).

[4] *Palazzolo v. Rhode Island*, 533 U. S. 606, 617 (121 SC 2448, 150 LE2d 592) (2001).

[5] Id.

[6] *Palazzolo*, 533 U. S. at 618, quoting *Armstrong v. United States*, 364 U. S. 40, 49 (80 SC 1563, 4 LE2d 1554) (1960).

[7] We note that the Statute does not prohibit appellant from visiting his parent's property, conducting a business on the property, or even purchasing and leasing the property – it only prohibits his residency on the property.

designed to safeguard against encounters between minors and a convicted sex offender by requiring at least a 1,000 foot distance between places where the former congregate and the latter resides. While not every convicted sex offender will be a recidivist, the statute aims to lessen the potential for those offenders inclined toward recidivism to have contact with, and possibly victimize, the youngest members of society. As such, the State's interests underlying the Residency Statute are entitled to substantial weight.[8]

Accordingly, we find that whatever minimal property interest appellant may have had in residing in his parents' home was substantially outweighed by the State's interests underlying the Residency Statute. The Statute had very little economic impact on appellant and there is no evidence that appellant had any investment-backed expectations relative to the property. In no sense did the Statute's application in this case impose a burden upon appellant that should have been borne by society-at-large. It follows that we reject appellant's claim that the Residency Statute permits the regulatory taking of property without just and adequate compensation.

3. Appellant urges that the Residency Statute is unconstitutionally over-broad because less restrictive remedies are available to promote the State's interest in separating convicted sex offenders and minors. However, a statute is over-broad only if it reaches a substantial amount of constitutionally protected conduct.[9] In the present case, the Residency Statute does not have an impact upon any protected conduct, since it only prohibits residency within 1,000 feet of a "child care facility," "school," or an "area where minors congregate." A convicted sex offender may still own property and lease it, visit it, or conduct any type of business upon it within the 1,000 foot zone. Accordingly, contrary to appellant's argument, we conclude the Statute's restrictions are narrowly tailored to serve its intended purpose, and we reject his over-breadth argument.[10]

4. Appellant claims that the Residency Statute is unconstitutionally vague because individuals of common intelligence must guess at the meaning of "areas where minors congregate" and "child care

---

[8] We also note that insofar as the Statute is designed to protect the public welfare, health and safety, it appears to be a reasonable exercise of the State's police power. See *Pope v. City of Atlanta*, 242 Ga. 331, 334 (249 SE2d 16) (1978). In that regard, obedience to regulations that are enacted under the State's police power for purposes of public safety and that affect the use of property are generally not treated as a governmental taking. See *Fertilizing Co. v. Hyde Park*, 97 U. S. 659, 669-670 (24 LE 1036) (1878); *Atlantic Coast Line R. Co. v. Southern Ry. Co.*, 214 Ga. 178, 182 (104 SE2d 77) (1958); *McCoy v. Sanders*, 113 Ga. App. 565, 567 (148 SE2d 902) (1966).

[9] *Johnson v. State*, 264 Ga. 590, 591 (449 SE2d 94) (1994).

[10] See *Sanders v. State*, 231 Ga. 608 (203 SE2d 153) (1974).

facilities."[11] We disagree.

First, we note that appellant was required to relocate his residence only because it was within 1,000 feet of a "child care facility." The portion of the statute prohibiting registered sex offenders from living too close to "areas where minors congregate" was not applied to him. Hence, he is without standing to argue that particular term is impermissibly vague.[12]

As for the term "child care facility," it is defined in the Statute as "all public and private pre-kindergarten facilities, day-care centers and preschool facilities." Case law defines a "facility" as a place that is "built or installed to perform some particular function [and] something that promotes the ease of any action or course of conduct."[13] As such, we think it is abundantly clear that a "child care facility," as that term is used in the Statute, refers to a place that is built for the purpose of providing day-care, pre-kindergarten, or preschool services, and is not impermissibly vague.

5. Contrary to appellant's argument, the Residency Statute does not grant judicial authority to probation officers. The Statute does nothing to upset the existing statutory scheme, which only permits probation officers (members of the executive branch) to arrest probationers for suspected violations of the Statute.[14] Thereafter, only a judge is authorized to determine whether the Statute and the terms of probation actually have been violated.[15]

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 27, 2004.

*Sexton & Morris, Lee Sexton, Joseph S. Key*, for appellant.
*Thurbert E. Baker, Attorney General, J. Jayson Phillips, Assistant Attorney General*, for appellee.

---

[11] See *Jekyll Island-State Park Auth. v. Jekyll Island Citizens Assn.*, 266 Ga. 152, 153 (464 SE2d 808) (1996).

[12] See *State v. Shepherd Constr. Co.*, 248 Ga. 1, 6 (281 SE2d 151) (1981) (one may attack a statute not applied to him as impermissibly vague only when the challenged statute regulates free speech).

[13] *Raynor v. American Heritage Life Ins. Co.*, 123 Ga. App. 247, 249 (180 SE2d 248) (1971).

[14] See OCGA § 42-8-38 (a).

[15] See OCGA § 42-8-38 (b), (c).