## S06A0042, S06A0043. RABUN COUNTY v. MOUNTAIN CREEK ESTATES, LLC (two cases).
### (632 SE2d 140)

MELTON, Justice.

After Rabun County refused to accept ownership of the roads in a subdivision that Mountain Creek Estates, LLC, had developed, Mountain Creek filed this action, claiming that the County's refusal was improper under the Rabun County Zoning Ordinance and Subdivision Regulations. Mountain Creek sought both monetary damages and mandamus relief in the form of an order requiring the County to accept ownership of the roads. In its defense, the County contended that it was not obligated to accept the roads because they did not comply with specifications for shoulder width set forth in the Ordinance.

On February 23, 2005, a jury returned a verdict specifically finding that Mountain Creek had complied with the county's subdivision requirements in the construction of its roads and that the county had unreasonably withheld approval of the roads. The jury awarded $472,280 in favor of Mountain Creek based on its claim of inverse condemnation. The trial court also granted mandamus relief, ordering the county to accept ownership of Mountain Creek's roads. On April 6, 2005, the trial court awarded Mountain Creek $15,000 in attorney fees under OCGA § 9-15-14. In Case No. S06A0042, the county contests the award of damages and mandamus relief, and in Case No. S06A0043, the county contests the award of attorney fees.

## Case No. S06A0042

1. The County contends that, because Mountain Creek failed to properly set forth a claim for inverse condemnation, it was entitled to sovereign immunity from Mountain Creek's claim for damages. We agree.

This case revolves around Mountain Creek's contention that the County abused its discretion by refusing to accept roads on its property in accordance with a county ordinance. This is an archetypal mandamus claim, to which that area of the law is uniquely suited and was properly applied in this matter. On the other hand, Mountain Creek's contention about the roads it constructed is the opposite of a true claim for inverse condemnation. Mountain Creek's argument rests not on an act of commission resulting in a taking based on the diminishment of functionality of its land, but on an act of omission resulting in a failure to take or a "no-taking" which had no effect on functionality. As a result, no viable claim for inverse condemnation was raised in this case, and the County was entitled to sovereign immunity from Mountain Creek's claims for damages.

This Court has carefully delineated the extent to which a county may waive sovereign immunity in an inverse condemnation action. This limited waiver is based on the takings clause of the Georgia Constitution, which states that "private property shall not be taken or damaged for public purposes without just and adequate compensation being first paid." Constitution of the State of Georgia of 1983, Art. I, Sec. III, Par. I (a). In accordance with this provision,

> [p]rivate property owners may be compensated in inverse condemnation actions for the temporary taking of land for the paving of a turn lane, *Dept. of Transp. v. Edwards*, 267 Ga. 733, 736 (482 SE2d 260) (1997), increased noise and odor from a county's sewage plant, *Duffield v. DeKalb County*, 242 Ga. 432, 433-434 (249 SE2d 235) (1978), and flooding, siltation, and pollution from surface water diverted by roadway maintenance. *Powell v. Ledbetter Bros.*, 251 Ga. 649, 650 (307 SE2d 663) (1983).

*Columbia County v. Doolittle*, 270 Ga. 490, 492 (1) (512 SE2d 236) (1999).

In *Duffield*, supra, 242 Ga. at 433-434 (2), we considered what the term "property" encompasses in our takings clause:

> The term property comprehends not only the thing possessed, but also, in strict legal parlance, [m]eans the rights of the owner in relation to land or a thing; the [r]ight of a

person to possess, use, enjoy and dispose of it, and the corresponding right to exclude others from the use. Therefore, no physical invasion damaging to the property need be shown; only an unlawful interference with the right of the owner to enjoy his possession.

(Citation, punctuation and emphasis omitted.) Accordingly, in *Duffield*, an inverse condemnation claim was properly set forth because "[t]he property owners claim[ed] that increased noise and odors from [a nearby county water treatment facility] interfer[ed] with the use and enjoyment of their land and in the creation of a nuisance by endangering their health." Id. at 434 (2). In all of these cases, a county took some affirmative action for public purposes causing a nuisance or trespass which, in turn, resulted in the diminished utility and functionality of a private owner's land. The diminished functionality and utility, in turn, interfered with the owner's use and enjoyment of the land. Therefore, a "taking" for a public purpose occurred which supported a claim for inverse condemnation.

In the present case, Mountain Creek contends that the County has inversely condemned its property by refusing to accept roads Mountain Creek chose to construct within its subdivision. This contention fails to comprise a viable claim for inverse condemnation for a number of reasons. First, Mountain Creek's claim regards not a taking of property, but a refusal to take property. While such a claim raises mandamus issues, it does not trigger concepts of inverse condemnation. Second, irrespective of whether there has been any physical invasion, the County's inaction has created neither a nuisance nor a trespass upon Mountain Creek's property. Third, as a result, the County's inaction has not caused diminished utility or functionality of Mountain Creek's property, although the value of the property might be higher if it did have county-maintained roads. Mountain Creek's ability to use and enjoy the property remains exactly the same as the day that the property was purchased, at which time the property had no county-maintained roads. Mountain Creek remains free to use the property in any legal manner it wishes without encumbrance. Therefore, it cannot be said that the County has inversely condemned Mountain Creek's property, and, as a result, the County was entitled to sovereign immunity against Mountain Creek's claim for damages.[1]

Finally, it must be remembered that the writ of mandamus is an extraordinary remedy available in limited circumstances to compel

---

[1] Because the County was immune from Mountain Creek's claim for damages, we need not reach the County's remaining enumerations regarding the sufficiency of Mountain Creek's proof of damages.

action by a public officer *when there is no other adequate legal remedy*. OCGA § 9-6-20; *Ford Motor Co. v. Lawrence*, 279 Ga. 284 (612 SE2d 301) (2005). The dissent nonetheless finds that Mountain Creek is entitled to both the writ of mandamus as well as the award of monetary damages for a single act of the County. The law simply does not allow this stacking of remedies. Id. To the contrary, if another legal remedy is available, mandamus is not. Here, Mountain Creek is entitled to mandamus relief only because the County has sovereign immunity from its claim for damages and no other legal remedy remains. Therefore, the award of damages must be reversed.

2. The County contends that Mountain Creek did not prove that the shoulders of its roads were two-feet wide, as required by the Ordinance,[2] and that the trial court erred in denying its motion for a directed verdict on this issue. Concomitantly, the County contends that Mountain Creek was not entitled to mandamus relief.[3] For the reasons that follow, we disagree.

In reviewing the County's contention that the trial court erred in denying its motion for directed verdict, we must affirm if there is any evidence to support the jury's verdict, and in making this determination, we must construe the evidence in the light most favorable to the prevailing party. See *Ga. Power Co. v. Irvin*, 267 Ga. 760, 762 (482 SE2d 362) (1997). Construed in this light, there is some evidence that the subdivision roads met the Ordinance's requirements for shoulders. Charles Bingham, who built Mountain Creek's roads, testified that ninety-five percent of the subdivision roads had shoulders wider than two feet and that the other five percent had one-foot wide shoulders. He also added that, where the shoulders are one-foot wide, the asphalt is twenty-feet wide. Moreover, Lewis Canup, the County's expert, acknowledged that the County ordinance required the subdivision roads to be only eighteen-feet wide; that Mountain Creek's roads were twenty-feet wide; that the extra foot of paving on each side served the purpose of a shoulder; and that a foot of the paving on each side of the road could be counted as a shoulder if Mountain Creek would put a stripe on each side of the road. Canup acknowledged, however, that the County ordinance did not require striping on any subdivision roads. Canup also acknowledged that a "good portion" of the problems about which he testified occurred after a hurricane came through the area and that such problems were not "abnormal"

---

[2] The relevant provision in the ordinance states that county roads should "have 18 feet of pavement width and shoulders of not less than 2 feet on both sides." Section 706 (f) (1) of the Ordinance.

[3] Section 706 (f) of the Ordinance provides that "[t]he Rabun County Board of Commissioners shall accept roads constructed according to [stated] specifications into the Rabun County road system."

after a hurricane. In addition, in September 2003, a county road department foreman signed a "Road Approval Certification" form stating that he had inspected Mountain Creek's roads and that the "roads have been built in compliance with the county road specifications and are approved for subdivision approval."[4]

The foregoing evidence is sufficient to support the jury's finding of fact that Mountain Creek had complied with the shoulder requirement. Likewise, it also supports the grant of mandamus relief.

3. The County contends that requiring the County to accept the subdivision roads violates the Georgia Constitution's prohibition against a government granting gratuities.[5] However, this Court has adopted the "ordinary definition of 'gratuity' as 'something given freely or without recompense; a gift.' " *Garden Club of Ga. v. Shackelford*, 266 Ga. 24, 24 (463 SE2d 470) (1995). Here, because Mountain Creek expended hundreds of thousands of dollars to build the roads in question, and because the evidence, even when viewed favorably to the County, shows that the problems raised by the County concerning shoulders occur at only certain locations in the two-mile road system, we conclude that the County's acceptance of the roads does not amount to an illegal gratuity. Moreover, contrary to the County's contention, OCGA § 32-3-3 (d) does not prohibit the inclusion of the roads into the county system. OCGA § 32-3-3 (d) states that a county may acquire "rights of way or other real property or interests" by dedication, "provided that the property or interests are adequate for public road purposes and serve the best interests of the public."

The County argues that, because Canup testified that Mountain Creek's roads have certain problems, they are not "adequate for public road purposes" and do not "serve the best interests of the public" within the meaning of OCGA § 32-3-3 (d), and that therefore Mountain Creek was not entitled to mandamus relief. The County is essentially contending that the phrase "adequate for public road purposes" means that any property acquired by a government by dedication under OCGA § 32-3-3 (d) must presently have roads constructed on it that meet certain road standards, such as those discussed by Canup. We disagree with this contention.

---

[4] The road foreman testified that he did not inspect the shoulders before signing the certification. However, because he testified that he usually inspected shoulders, and because the ordinance specifies that "paved roads shall have 18 feet of pavement and shoulders of not less than two feet," a jury would be authorized to rely on the unqualified certification that Mountain Creek's roads met the County's road specifications as some evidence that Mountain Creek's roads met the shoulder requirements.

[5] Art. III, Sec. VI, Par. VI (a) of our Constitution provides that "the General Assembly shall not have the power to grant any donation or gratuity." The provision applies "to cities and counties." *Grand Lodge of Ga. v. City of Thomasville*, 226 Ga. 4, 8 (172 SE2d 612) (1970).

OCGA § 32-3-3 (d) is part of a statutory scheme that enables state and local governments to acquire "any property" for public transportation purposes even if the property is undeveloped and suitable for future road purposes only.[6] In this regard, OCGA § 32-3-1 (a) provides that "any property," not merely completed roads built to certain specified standards, "may be acquired" by a county, state, or municipal government "through gift, devise, exchange, purchase, prescription, *dedication*, eminent domain, or any other manner provided by law for present or future public road or other transportation purposes" (emphasis supplied). If the General Assembly had intended OCGA § 32-3-3 (d) to limit governments to only acquiring by dedication fully constructed roads that satisfy certain engineering requirements, the General Assembly could easily have so provided. Instead, the General Assembly used much broader language, providing that a government may acquire by dedication "rights of way or other real property or interests" so long as "the property or interests are adequate for public road purposes." Accordingly, in context, it is clear that the phrase "adequate for public road purposes" does not mean that the property presently has to have a road constructed on it that meets certain engineering standards, but that, in a general sense, the property to be acquired must be suitable or adequate for accommodating a public road. Having reviewed the record in the present case, we conclude that Mountain Creek's roads satisfied this standard.

In any event, we conclude that where, as here, the County has set standards for the acceptance of subdivision roads as county roads and where, as here, the subdivision roads are found to meet those standards, the subdivision roads are adequate for public road purposes and serve the best interest of the public.

4. For the foregoing reasons, in Case No. S06A0042, we affirm the grant of mandamus relief and reverse the award of damages.

### Case No. S06A0043

5. The trial court awarded Mountain Creek $15,000 in attorney fees under OCGA § 9-15-14 (a) and (b). The trial court based the award on its finding that the County asserted as a defense that Mountain Creek had to comply with a list of road improvements that the County's expert, Lewis Canup, had compiled in August 2004 and that many items on that list were not required by the County's ordinance.

On appeal, the County contends that the trial court's finding that the County relied on the Canup memo as a defense at trial is not

---

[6] See OCGA § 32-3-1 (a).

supported by the record. Our review of the record, however, shows that the record supports the trial court's finding. First, the trial court correctly found that Canup's list of recommendations contained items that were not required by the ordinance. Moreover, in a pre-trial order, the County stated that it would offer Canup's memo regarding Mountain Creek's roads into evidence at trial. In addition, at trial, the County introduced Canup's report into evidence, and established that Canup had first evaluated Mountain Creek's roads in July 2004 and then again in February 2005, shortly before trial. The County's attorney then asked Canup whether, when he evaluated the roads in February 2005, any of his recommendations from his August 2004 report had been completed. Notably, the County did not limit its question to items in Canup's report that were also requirements of the ordinance. Further, during closing arguments, the County argued extensively about Mountain Creek's failure to comply with the list of improvements in the Canup memo. We conclude that the County's reliance on the Canup memo in the foregoing regards supports the trial court's award of attorney fees.

*Judgment affirmed in part and reversed in part in Case No. S06A0042. All the Justices concur, except Sears, C. J., Hunstein, P. J., and Hines, J., who concur in part and dissent in part. Judgment affirmed in Case No. S06A0043. All the Justices concur.*

SEARS, Chief Justice, concurring in part and dissenting in part.

I agree with the majority to the extent it affirms the grant of mandamus relief and the award of attorney fees to Mountain Creek Estates ("Mountain Creek"). However, for the reasons that follow, I dissent to the majority's holding that Mountain Creek was not entitled to damages.

1. The majority reverses the jury's award of damages to Mountain Creek on the ground that Mountain Creek failed to assert a viable claim for inverse condemnation. I disagree with this conclusion.

(a) Contrary to the majority's ruling, the jury's award of damages for inverse condemnation is consistent with our holding in *Duffield v. DeKalb County*.[7] In that case, we held that if a government interferes with an owner's right to enjoy his property, the owner can assert a claim for inverse condemnation. We defined property as the *"rights of the owner in relation to land,"* including the *"right of a person to possess, use, enjoy and dispose of it."*[8]

An examination of the evidence and the jury's findings clearly demonstrates how Rabun County's actions in this case interfered

---

[7] 242 Ga. 432 (249 SE2d 235) (1978).

[8] (Emphasis in original.) Id. at 433-434.

with Mountain Creek's right to use and dispose of its property. Here, as the majority concludes, the evidence supports the jury's determination that Mountain Creek complied with the objective requirements of Rabun County's ordinance for the acceptance of roads. Moreover, the jury specifically found that Rabun County unreasonably withheld its approval and acceptance of the roads, and that finding is supported by the record. Thus, absent Rabun County's unreasonable conduct, Mountain Creek would have had the right to market and dispose of its subdivision lots based on their having access to public roads. Unfortunately for Mountain Creek, Rabun County's conduct prohibited it from doing so, forcing Mountain Creek to sell 22 of its lots at a reduced value.[9] The county's improper refusal to accept the roads thus interfered with Mountain Creek's right to use, enjoy, and dispose of its property and indisputably harmed Mountain Creek. Mountain Creek, therefore, should be entitled to damages.

The majority's assertion that Rabun County has done nothing with regard to Mountain Creek's property and has simply maintained the original condition of Mountain Creek's roads as private roads puts form over substance. The ordinance did not give Rabun County the right to maintain the status quo, and its violation of its duty to accept the roads harmed Mountain Creek. Moreover, in the nuisance cases on which the majority relies, there was no "taking" of property for a public purpose that caused a nuisance. There was an existing public use, such as a sewer system,[10] that, over time, became a nuisance, interfering with the property owner's right to use and enjoy his land.[11] Here, as outlined above, Rabun County has interfered with Mountain Creek's right to use and enjoy its land, and Mountain Creek should be, as were the plaintiffs in the nuisance cases, permitted to recover damages.

(b) Moreover, Mountain Creek's claim of inverse condemnation was valid under a regulatory takings analysis. In this regard, courts have held that a claim for inverse condemnation may be presented even when, as in the present case, a property owner is not denied all economically viable use of his property by a government regulation.

---

[9] The jury's award of damages to Mountain Creek for the 30 lots that remained unsold at the time of trial is unsustainable. The award of mandamus relief will permit Mountain Creek to market those lots as having access to public roads, and the award of damages for those lots thus constitutes an impermissible double recovery.

[10] See *Duffield*, 242 Ga. at 432.

[11] As stated by then Justice Weltner (later Chief Justice Weltner), the nuisance-inverse condemnation cases do not involve a taking "of any kind – either direct or 'inverse.' " He aptly stated that they simply involve a county creating a " 'nuisance,' as that label has been understood over the centuries," and a plaintiff being awarded damages for that nuisance. *DeKalb County v. Orwig*, 261 Ga. 137, 141 (402 SE2d 513) (1991) (Weltner, J., dissenting).

> Where a regulation places limitations on land that fall short of eliminating all economically beneficial use, a taking nonetheless may have occurred, depending on a complex of factors including the regulation's economic effect on the landowner, the extent to which the regulation interferes with reasonable investment-backed expectations, and the character of the government action.[12]

This Court has recognized the validity of the *Palazzolo* analysis,[13] and relying on that analysis, some courts have engaged in case-specific inquiries regarding whether a claim for inverse condemnation is presented.[14] For instance, in Alaska, the courts consider "four factors: (1) the character of the governmental action; (2) its economic impact; (3) its interference with reasonable investment-backed expectations; and (4) the legitimacy of the interest advanced by the regulation or land-use decision."[15]

Balancing factors such as those noted in the foregoing cases, I conclude that Mountain Creek has a valid claim for inverse condemnation. First, a government frequently will have an important interest underlying its regulation, such as the protection of environmentally sensitive lands. Here, no such overarching interest is present. In fact, based on the jury's finding, which is supported by the record, that Mountain Creek complied with the county's requirements for building subdivision roads, the county had no legitimate governmental interest in refusing to accept the roads. In my view, this factor weighs significantly in favor of finding in favor of Mountain Creek. Moreover, the county's decision not to accept the roads has had a significant economic impact on Mountain Creek, a small developer, and Mountain Creek certainly had reasonable investment-backed expectations that if it complied with the county's ordinance, the county would accept the roads.

In addition to the foregoing theory, in *City of Monterey v. Del Monte Dunes*,[16] a case in which the City of Monterey repeatedly rejected the reasonable development plans of a developer, the Court recognized that a viable inverse condemnation claim was presented if the city's decisions to deny the developer's plans did not bear a reasonable relationship to the city's proffered justifications.[17] In this

---

[12] *Palazzolo v. Rhode Island*, 533 U. S. 606, 617 (121 SC 2448, 150 LE2d 592) (2001).

[13] *Mann v. State*, 278 Ga. 442, 443 (603 SE2d 283) (2004).

[14] See, e.g., *R & Y, Inc. v. Municipality of Anchorage*, 34 P3d 289 (Alaska 2001); *K & K Constr. v. Dept. of Environmental Quality*, 267 Mich. App. 523 (Mich. Ct. App. 2005).

[15] *R & Y, Inc. v. Municipality of Anchorage*, 34 P3d at 293.

[16] 526 U. S. 687, 721 (119 SC 1624, 143 LE2d 882) (1999).

[17] Id. at 702-707.

regard, the Supreme Court noted (and did not disagree with) the fact that both the district court and the Court of Appeals had ruled that the developer presented a valid claim of inverse condemnation if it made the above showing regardless of the issue of whether the developer was denied all economically viable use of its property.[18]

In the present case, because the record supports the jury's findings that Mountain Creek's roads complied with Rabun County's ordinance and that Rabun County unreasonably withheld approval of the roads, I would find that the county's refusal to accept Mountain Creek's roads did not bear a reasonable relationship to the city's proffered justifications for that refusal, and that Mountain Creek therefore asserted a valid claim of inverse condemnation.

(c) Finally, Mountain Creek's claim for damages for inverse condemnation is not defeated by the availability of mandamus relief. This Court has repeatedly permitted a property owner to recover damages for past harm to his property, as well as extraordinary relief, such as mandamus relief or injunctive relief, to prevent future harm.[19] Similarly, here, Mountain Creek should be entitled to damages for the harm caused to it before trial, and should be entitled to mandamus relief to prevent a future harm, as mandamus relief is the superior remedy to future damages.

2. For the foregoing reasons, in Case No. S06A0042, I dissent to the part of the majority opinion reversing the jury's award of damages to Mountain Creek, but I join the majority to the extent it affirms the award of mandamus relief. In Case No. S06A0043, I join the majority's affirmance of the award of attorney fees to Mountain Creek.

I am authorized to state that Presiding Justice Hunstein and Justice Hines join in this concurrence in part and dissent in part.

DECIDED JULY 6, 2006 —
RECONSIDERATION DENIED JULY 28, 2006.

O'Quinn & Cronin, Donald A. Cronin, Jr., for appellant.
Cummings & Dillard, Michael H. Cummings II, Alston & Bird, T. Michael Tennant, A. McCampbell Gibson, Christina H. Eikhoff, Paul J. Kaplan, for appellee.

---

[18] Id. at 700-702.
[19] See, e.g., *Dept. of Transp. v. Edwards*, 267 Ga. 733, 738-739 (4) (482 SE2d 260) (1997) (property owner entitled to damages for the period of time before trial that the Department of Transportation had taken his land and for injunctive relief to require the DOT to convey the land back to him); *Reid v. Gwinnett County*, 242 Ga. 88 (249 SE2d 559) (1978) (property owner entitled to damages as well as injunctive relief for continuing nuisance).